CENTRAL BANK *v.* COLONIAL ROMANELLI
ASSOCIATES ET AL.
(13346)

O'CONNELL, HEIMAN and SPEAR, Js.

Argued April 25—decision released August 1, 1995

*Richard P. Weinstein,* for the appellants (named defendant et al.).

*Robert E. Byron,* with whom were *Ealy Bennett* and, on the brief, *John J. Graubard,* for the appellee (substitute plaintiff).

O'CONNELL, J. The defendants Colonial Romanelli Associates and Philip S. Will appeal from the judgment rendered for the plaintiff after a trial to the court. They claim that the trial court (1) improperly awarded interest where the note provided for a variable interest rate based on a failed index, (2) improperly admitted evidence concerning the amount of the debt and the computation of interest, and (3) improperly admitted testimony derived from computer records without a

proper foundation. We do not discuss an additional claim pertaining to a late charge because it has been conceded by the plaintiff. We reverse the judgment and remand the case to the trial court for further proceedings.

On February 23, 1990, the defendants Colonial Romanelli Associates, Richard Suisman and Mark Gerrety signed a $700,000 note payable to First Central Bank (Central). The defendants Suisman and Gerrety, together with the defendants George Ritter and Philip S. Will, endorsed the note. When the defendants defaulted in payment, Central brought this action in two counts. In the first count, Central sought payment of the note and in the second count sought reconveyance of real estate allegedly fraudulently conveyed by the defendant Philip S. Will to his wife, the defendant Karen P. Will.

On October 18, 1991, Central was declared insolvent. The Federal Deposit Insurance Corporation (FDIC) was appointed receiver and was later substituted as the party plaintiff in this action. After a hearing in damages held on January 18, 1994, the trial court rendered judgment for the plaintiff for $982,612.32, representing $700,000 principal, $246,009.51 interest, $35,102.81 late charge and $1500 attorney's fees and court costs. The issues concerning the defendants Suisman, Gerrety and Ritter have been resolved, and they are no longer parties to this appeal.

No judgment had been rendered on the second count at the time that this appeal was taken. Accordingly, Colonial and Philip S. Will[1] are appealing only the first count, which constitutes a final judgment for purposes of appeal. See *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). Additional facts are included in our analysis of individual claims.

---

[1] We refer to Colonial and Will as the defendants in this opinion.

## I

The defendants claim that the trial court improperly awarded interest based on a failed index. The note provided that interest thereon would run at a rate of 1 3/4 percent over Central's prime rate. The note also provided that "the interest rate would be adjusted as and when Central's prime rate changes and would be calculated on the basis of a 360 day year adjusted daily."

When Central became insolvent in October, 1991, the index governing the interest rate of this note ceased to exist. The burden was on the FDIC, as successor to Central, to prove what rate it used to compute the interest charges and that the rate was reasonable.

When a variable interest rate is based on the rate of a failed institution, the trial court must determine whether the substitute rate is reasonable by examining the documents and testimony offered by the plaintiff. See *Federal Deposit Ins. Corp.* v. *Blanton*, 918 F.2d 524, 532 (5th Cir. 1990); *Federal Deposit Ins. Corp.* v. *La Rambla Shopping Center*, 791 F.2d 215, 223 (1st Cir. 1986); *Federal Deposit Ins. Corp.* v. *Cage*, 810 F. Sup. 745, 747 (S.D. Miss. 1993).

In *Mechanics & Farmers Savings Bank, FSB* v. *Delco Development Co.*, 232 Conn. 594, 597–98, 656 A.2d 1034 (1995),[2] the original bank had failed and, as in the present case, the FDIC took over as receiver and substitute plaintiff. The trial court took evidence and concluded that the interest rate of Chase Manhattan Bank of Connecticut, successor to the failed bank, was a reasonable substitute index. In the present case, the FDIC used a rate 1 3/4 percent above Central's prime rate on April 1, 1991, the date of default, but did not present

---

[2] The Supreme Court opinion incorporates the trial court opinion reported at 43 Conn. Sup. 408, 422–23, 656 A.2d 1075 (1995).

any evidence concerning the reasonableness of this rate. Therefore, the matter must be remanded for a new trial.

In its brief, the FDIC also argues that (1) because no defense or claim of recoupment was interposed, the FDIC as holder of a negotiable instrument is entitled to judgment as a matter of law and (2) if the default interest rate did not continue after Central failed, the interest rate becomes the judgment rate. This brief, however, was filed prior to our Supreme Court's decision in *Mechanics & Farmers Savings Bank, FSB* v. *Delco Development Co.*, supra, 232 Conn. 597, which is now controlling on the issue of determining a variable interest rate when the index has failed.

## II

Although the first claim is dispositive of the appeal, the second and third issues both involve evidentiary questions that may arise on retrial. Both issues implicate the use of computer records.

The defendants complain that evidence of the amount of the debt should not have been admitted because (1) it lacked a proper foundation and (2) it was hearsay. The FDIC had the burden of establishing the date of default and the principal and interest due. Ralph Edwards, a credit specialist with FDIC, was offered by the plaintiff as a witness through whom the plaintiff attempted to introduce evidence of the debt.

Edwards based his testimony on Central's and FDIC's computer records. He had no personal knowledge of the reliability of the computer system but merely accessed it and used the information obtained therefrom. The computer records were not admitted into evidence. Because Edwards was not responsible for entering the data in the computer and had no opinion concerning the accuracy of the records or how they

were created, his testimony lacked a proper foundation and should not have been admitted. *State* v. *Barnes*, 232 Conn. 740, 747, 657 A.2d 611 (1995); see 1 C. McCormick, Evidence (4th Ed. 1992) § 10, pp. 37–40.

Moreover, because Edwards was not testifying from his personal knowledge, his testimony was hearsay and should not have been admitted. Hearsay is defined as a statement made out-of-court that is offered to establish the truth of the facts contained in the statement. *State* v. *Jaynes*, 35 Conn. App. 541, 548, 645 A.2d 1060, cert. denied, 231 Conn. 928, 648 A.2d 880 (1995). Edwards was testifying from computer records created and controlled by others. Because the computer records were not in evidence, testimony about their contents, by a witness without personal knowledge of the contents, is hearsay. *Bell Food Services, Inc.* v. *Sherbacow*, 217 Conn. 476, 488–89, 586 A.2d 1157 (1991).

Because the contents of the computer records were at issue, the records themselves were the best evidence of the amount of the debt and the interest calculation. Accordingly, they should have been admitted into evidence before Edwards was permitted to testify concerning their contents. See *Coelm* v. *Imperato*, 23 Conn. App. 146, 150, 579 A.2d 573, cert. denied, 216 Conn. 823, 581 A.2d 1054 (1990). Without the admission of the records into evidence, Edward's testimony, as to their content, was hearsay and should not have been admitted.

The defendant cites *American Oil Co.* v. *Valenti*, 179 Conn. 349, 357, 426 A.2d 305 (1979), on the issue of the admissibility of computer information as business records pursuant to General Statutes § 52-180. A discussion of that case is unwarranted here, however, because the computer records were not offered or admitted into evidence; "an appellant is entitled to

review of claims on appeal only on the basis that that evidence was admitted in the trial court." *State* v. *Casey*, 30 Conn. App. 346, 351, 620 A.2d 201 (1993), rev'd on other grounds, 228 Conn. 487, 636 A.2d 840 (1994).

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.