[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: (173) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND (191) DEFENDANT'S MOTION TO STRIKE
On June 15, 1998, the plaintiff, Anne Altern, commenced this action in eight counts against the six named defendants including Debra Pearlman. On September 10, 1998 the plaintiff filed an amended complaint which included revisions to the fifth, seventh and eighth counts.
In the Sixth Count the plaintiff claimed that the defendant Debra Pearlman acting by herself or through her husband and attorney, defendant Robert H. Lessler, presented inaccurate information concerning certain real property owned by the plaintiff which resulted in additional time, effort and expense in regard to the construction of the plaintiff's new home and that she additionally caused the plaintiff to incur additional unnecessary expenses and costs related to the construction project. CT Page 1471
In the Seventh Count the plaintiff claimed that the defendant Debra Pearlman, acting through her attorney, the defendant Robert H. Lessler, caused the plaintiff certain losses and damages by acts which were unfair trade practices within the meaning of Sec. 42-110b, et seq., C.G.S.
The defendant Debra Pearlman filed a motion for summary judgment in her favor as to the Sixth and Seventh Counts of the plaintiff's complaint together with a memorandum of law and affidavits in support of the relief sought.
The plaintiff filed her objection to the motion for summary judgment and also filed a memorandum of law and an affidavit opposing the motion.
The defendant then filed a motion to strike the 14th and 15th
paragraphs of the plaintiff's affidavit for the reason that they contained hearsay — if not double hearsay.
The court heard oral argument on both motions simultaneously and reserved decision regarding both the motion to strike and the motion for summary judgment. The two motions are obviously integral to one another and for that reason the court addresses them both in this one memorandum of decision.
In 1996, Altern entered into a written contract with Pearlman for the purchase of a lot (Lot 2) located in Redding, Connecticut. During negotiations for the purchase and sale of Lot 2, Pearlman was represented by her attorney and husband, defendant Robert H. Lessler. During said time, the plaintiff retained defendant William J. Fitzpatrick as counsel. In the late Fall, 1996, Altern hired defendant Robert Jontos and the defendant Land-Tech Consultants, Inc., to provide her with a subdivision site plan map for Lot 2. After purchasing Lot 2, Altern discovered that the approval of the development of a subdivision of Lot 2 by relevant municipal employees was not as she believed. As a result, Altern alleges losses and damages arising from the actions of the defendants.
As to the motions currently before the court, in the sixth count, Altern alleges that, in 1996, Pearlman, represented by Lessler, wrongfully represented to Altern's attorney, Fitzpatrick, that the town approved a site plan for Lot 2 with drainage, grading, and driveway. Additionally, Lessler, acting for himself and his wife, obtained the signature of the First Selectman of the town of Redding on a document which purported to give his wife, Pearlman, the right to grade, drain and construct a driveway. Lessler delivered the signed agreement to Land Tech Consultants and/or Fitzpatrick, allegedly knowing that they would rely on CT Page 1472 said agreement in advising Altern that Lot 2 had the requisite site plan approval providing for drainage, grading and a driveway. As a result, Land Tech incorporated the agreement into its plans and Altern was damaged as a result of relying on the Land Tech plan. Further, Altern alleges in the seventh count that her losses and damages were proximately caused by Pearlman, acting through her attorney, Lessler, which acts were unfair trade practices within the meaning of General Statutes § 42-110b.
(191) DEFENDANT'S MOTION TO STRIKE
The first issue presented is whether paragraphs fourteen and fifteen of the plaintiff, Anne Altern's, August 29, 2000 affidavit should be stricken on the ground that these paragraphs contain double hearsay. Having considered the arguments, the memoranda of law and the relevant case law and authority cited, the court finds that paragraphs fourteen and fifteen should be stricken because said paragraphs contain double hearsay, thereby making the paragraphs inadmissible for purposes of defendant, Pearlman's, motion for summary judgment.
In order for this court to decide Pearlman's motion for summary judgment, it is necessary to initially address Pearlman's motion to strike certain portions of Altern's August 29, 2000 affidavit. "Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." Home Ins. Co. v. Aetna Life Casualty Co., 235 Conn. 185, 202-03, 663 A.2d 1001 (1995). Practice Book § 17-46 provides, in relevant part, that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." "Hearsay statements are insufficient to contradict facts offered by the moving party . . . and if an affidavit contains inadmissible evidence it will be disregarded." (Citations omitted.) 2830 Whitney Avenue v.Heritage Canal Development Associates, 33 Conn. App. 563, 568-69,636 A.2d 1377 (1994); see also Great Country Bank v. Pastore,241 Conn. 423, 436, 696 A.2d 1254 (1997) (finding that the trial court properly deemed the submitted affidavit as hearsay, thereby making it inadmissible for the purpose of opposing the motion for summary judgment.) Moreover, "[a] motion to strike is the proper method to attack a counteraffidavit that does not comply with rules." 2830 Whitney AveCorp. v. Heritage Canal Development Associates, Inc., supra,33 Conn. App. 569 n. 3.
Pearlman moves to strike paragraphs fourteen and fifteen of Altern's affidavit on the ground that these paragraphs contain double hearsay and should not be considered by this court. Paragraph fourteen of Altern's affidavit states: "14) Attorney William H. Fitzpatrick told me during the CT Page 1473 time he represented and advised me in purchase arrangements, that he had been told by the defendant Robert H. Lessler, who was acting as an attorney for his wife, the defendant Debra Pearlman, that the Town had approved site plan for Lot 2 (the lot I was purchasing from the defendant). This conversation was mentioned in a portion of my deposition, which the defendant Debra Pearlman offered as evidence in support of her Motion for Summary Judgment." Paragraph fifteen states: "15) Also, according to other information I obtained from Attorney Fitzpatrick, the defendant Robert H. Lessler provided him during this time with a document in response to his request for a specific agreement with the Town of Redding, which I later discovered was not an agreement with the town of Redding, and which my present attorney, Sid M. Miller, found an examination of the town records and conversations with the Town Clerk who is responsible to maintain these records, that there is no town record for the Town acts required to formulate an agreement of the sort described in the document. I also heard that the First Selectman, who signed the document (and who can testify at trial), was disturbed (angry?) about how his signature was obtained at the urging of the defendant Robert H. Lessler on a document that purports to be an act of the Town."
Upon review of the plaintiff's affidavit, the court finds that paragraphs fourteen and fifteen do not comply with Practice Book §17-46 and should be stricken. "Hearsay is defined as a statement made out-of-court that is offered to establish the truth of the facts contained in the statement." Federal Deposit Ins. Corp. v. Keating,44 Conn. App. 556, 559, 690 A.2d 429 (1997). In paragraph fourteen, the plaintiff indicates that she was informed by Fitzpatrick about what Lessler told Fitzpatrick regarding the site plan for Lot 2. Paragraph fifteen contains information that Sid Miller, the plaintiff's current attorney, obtained from talking with the Redding town clerk. Further, in paragraph fifteen, the plaintiff indicates that she heard information about the first selectman without indicating who she heard it from. Based on the foregoing, the court finds that said paragraphs contain hearsay. Both paragraphs contain statements by the plaintiff regarding information she obtained from either an unnamed party or through Fitzpatrick's or Sid Miller's conversations with a third party. For the reasons set forth herein above, the court finds that paragraphs fourteen and fifteen of the plaintiff's affidavit are inadmissible evidence and should be stricken, and thus disregarded, for purposes of Pearlman's motion for summary judgment. 2830 Whitney Avenue v. Heritage Canal Development Associates, supra, 33 Conn. App. 567.
(173) DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
The second issue presented is whether the defendant, Pearlman's, motion CT Page 1474 for summary judgment should be granted on the ground that no genuine issue of material fact exists in the allegations of the complaint directed against Pearlman.
Practice Book § 17-49 provides that summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." (Citations omitted; internal quotation marks omitted.) Miles v. Foley,253 Conn. 381, 386, 752 A.2d 503 (2000). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Citations omitted; internal quotation marks omitted.) Barrett v. Danbury Hospital, 232 Conn. 242,255, 654 A.2d 748 (1995). "The test is whether a party would be entitled to a directed verdict on the same facts." Sherwood v. Danbury Hospital,252 Conn. 193, 201, 746 A.2d 730 (2000).
A. As To The Sixth Count
The allegations in the sixth count of the plaintiff's complaint are based on fraud. "The essential elements of a cause of action in fraud are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon the false representation to his injury." (Internal quotation marks omitted.) Citino v. Redevelopment Agency, 51 Conn. App. 262, 275,721 A.2d 1197 (1998). "All of these ingredients must be found to exist; and the absence of any one of them is fatal to a recovery." (Internal quotations marks omitted.) Id.
In the present case, Pearlman and Lessler indicate in their affidavits submitted in support of Pearlman's motion for summary judgment that there were no misrepresentations made to Altern about the subject property.[1]
In support of her contention that no misrepresentations were made, Pearlman offers the following proof. First, Lessler states in his notes following a meeting with Altern on October 28, 1996 that "[Altern] suggested a price break if septic and driveway plans are not suitable any CT Page 1475 more. No conclusion on this point." (Lessler's affidavit, Exhibit 4.) Second, in a letter to Fitzgerald, Lessler wrote, "[a]s you will note, our development activity took place in 1987. We have not taken any further action in connection with the property since early 1998. Accordingly, we have no idea whether our old plans are still suitable." (Lessler's affidavit, Exhibit 5.) Third, the plans that Lessler sent to Fitzpatrick were stamped with the wording: "Not for Construction, for review and approval by public agencies only." (Lessler's affidavit, Exhibits 2, 3.) Fourth, upon request of Fitzpatrick, Lessler obtained an agreement with the Redding first selectman.[2]
Pearlman also argues that the contract for the sale of the subject property, signed by Altern and Pearlman, include the following provisions that are pertinent to the issue of misrepresentation. Paragraph seven of the contract reads, in relevant part: "The Purchaser represents that he has examined the premises and the he is fully satisfied with the physical condition thereof and that neither the Seller nor any representative of the Seller has made any representation upon which the Purchaser relies with respect to the premises covered by this Contract of Sale except as herein expressly set forth." (Lessler's affidavit, exhibit 9, ¶ 5, p. 4.) Further, paragraph seventeen of the contract reads, in relevant part: "This Contract of Sale (including any schedules and/or riders referred to in the body of this Contract of Sale which are attached hereto and made a part hereof) constitutes the entire Contract of Sale and understanding between the parties, and no oral statements or promises and no understanding not embodied in the Contract of Sale shall be of any effect whatsoever." (Lessler's affidavit, exhibit 9, ¶ 17, p. 7.) Pearlman contends that the contract expressly excludes the representations that form the basis of Altern's claim against Pearlman.
Finally, Pearlman argues that, even if misrepresentations were made, Altern did not rely on them. Thus, without reasonable reliance, Altern's claims must fail because they are grounded in fraud. In support of this argument, Pearlman notes that Altern hired an attorney and engineer to determine and verify the zoning status of the lot she was purchasing.
In opposition, Altern filed a memorandum, together with her affidavit and Lessler's answers to interrogatories. In her affidavit, Altern states that information was misrepresented to her by both Pearlman and Lessler. Specifically, she states: "[b]efore I took title to the real estate described in the complaint, I met with defendant Debra Pearlman at the property site, where she pointed Out to me the location of a proposed driveway which she said had been approved earlier by the Town for construction." Altern also states that "Attorney Lessler told me that the driveway location (which has been shown to me earlier on site by his wife) had been approved by the town." Altern further argues that CT Page 1476 she did not understand "suitable," a term used by Lessler, to mean "buildable."[3] Rather, she understood "suitable" to mean suitable for her own use. Altern argues that a jury is necessary to determine whether "suitable" meant "buildable."
Altern further argues that Pearlman and Lessler failed to inform her in any detail of what words accompanied the delivery of the maps. Altern contends that the conversations involved with the delivery of the maps might explain to a jury why said maps, instead of a map bearing an official approval stamp, was provided by Lessler. Moreover, Altern contends that, at the time of trial, Altern will have the advantage of her attorney's investigation and will be able to subpoena the town clerk and the first selectman to establish the validity of the purported agreement and the representations made by Lessler, which he has avoided describing in his affidavit or answers to interrogatories. Finally, as to the issue of reliance, Altern claims that, even if it is proven that she did not rely on any representation by Pearlman or Lessler, Pearlman's and Lessler's argument about reliance does not meet the allegations stating that Pearlman and Lessler misled the attorney and engineer acting on behalf of Altern.
In the present case, neither party disputes that Pearlman — is liable for any misrepresentations made by Lessler, her attorney, when acting on her behalf. The dispute is, however, whether any misrepresentations were made to Altern and if so, whether Altern relied on those misrepresentations.
As described above, Altern, in her affidavit, asserts that both Pearlman and Lessler made false representations about Lot 2. She further asserts that the term "suitable," as used by Lessler, connoted a different meaning to her. Viewed in the light most favorable to Altern, these statements by Altern provide a sufficient factual predicate to withstand a motion for summary judgment. In order to prove fraud, however, a plaintiff needs to show reliance on a false representation. See Citino v. Redevelopment Agency of the City of Hartford, supra,51 Conn. App. 275 (1998).
In support of her motion, Pearlman includes portions of Altern's deposition addressing the issue of reliance.[4] For example, when asked about what formed the basis for her understanding that the lot was buildable, Altern replied that it was based on "[w]hat Mr. Fitzpatrick told me. (Defendant's memorandum, Exhibit 1, p. 46, 1. 16.) Altern also stated her belief that the Gruman plans had been approved by the town was based on what she was told by her attorney and Land Tech. (Defendant's memorandum, Exhibit 1, p. 62, 11. 12-18.) CT Page 1477
Pearlman further argues that the complaint illustrates why Altern's claim of reliance on any misrepresentation should fail. Pearlman points to count one, ¶¶ 1-4, 1-5, and 1-6 of the complaint to illustrate this point. Paragraph 1-4 of the complaint, for example, alleges that "the Plaintiff retained the Defendant William J. Fitzpatrick to provide her with legal services in connection with the purchase and sale of Lot 2, not only to determine and guide her to obtain an unencumbered fee simple title to Lot 2, but in particular to determine prior to the conveyance to her, the appropriate governmental authorities had approved a subdivision and site plan for Lot 2 acceptable to her. . . ."
The court finds that Pearlman adequately supports her motion, showing that there is no factual dispute regarding the issue of Altern's reliance on representations made by Pearlman or Lessler. Altern's own statements, in the complaint and in her deposition, indicate that she was not relying on statements by Pearlman, or Lessler, acting on behalf of Pearlman, when purchasing Lot 2. Once the party seeking summary judgment succeeds in their burden of showing the nonexistence of any material fact, it is "incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." (Internal quotations marks omitted.) Levine v. Advest, Inc., 244 Conn. 732, 759, 714 A.2d 649
(1998). The court finds that Altern fails to meet her burden. Because Altern fails to show that she acted upon the alleged false representations made to her by Pearlman and/or Lessler to her injury, recovery is unattainable by Altern. Citino v. Redevelopment Agency of theCity of Hartford, supra, 51 Conn. App. 275 (1998).
In response to the issue of reliance, Altern claims that, even if it is proven that she did not rely on any representation by Pearlman or Lessler, a finding that Altern did not so rely does not meet the allegations that Pearlman and Lessler misled the attorney and engineer who were acting on behalf of Altern. Further, Altern argues that, if paragraphs fourteen and fifteen of her affidavit, submitted in opposition to plaintiff's motion to strike, are stricken, the court should either provide Altern with time to depose Attorney Fitzpatrick and others or it should deny Pearlman's motion for summary judgment pursuant to Practice Book § 17-47.
Practice Book § 17-47 provides: "Should it appear from the affidavits of a party opposing the motion [for summary judgment] that such party cannot, for reasons stated, present facts essential to justify opposition, the judicial authority may deny the motion for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just." "A party opposing a summary judgment motion pursuant to § 382 [now Practice Book (1998 CT Page 1478 Rev.) § 17-47] on the ground that more time is needed to conduct discovery bears the burden of establishing a valid reason why the motion should be denied or its resolution postponed including some indication as to what steps that party has taken to secure facts necessary to defeat the motion. . . .The trial court has wide discretion under § [17-47] to determine whether the party seeking additional time to conduct discovery already has had a sufficient opportunity to establish facts in opposition to the summary judgment motion. . . ." (Citations omitted.)Peerless Ins. Co. v. Gonzalez, 241 Conn. 476, 489, 697 A.2d 680 (1997).
In the present case, Altern has not filed a motion for continuance or an affidavit in support of her contention that the court should provide her with additional time to depose Attorney Fitzpatrick and others. There is no indication that Altern had an insufficient opportunity to establish facts in opposition to Pearlman's motion for summary judgment. The court is not obligated to either deny the motion for summary judgment or order a continuance pursuant to Practice Book § 17-47
Having considered the argument and the memoranda of law and the relevant case law and authority cited, the court finds that Pearlman's motion for summary judgment as to the sixth count of the plaintiff's complaint should be and is hereby granted because no genuine issue of material fact exists regarding whether Altern relied on any representation made to her by Pearlman or by the defendant, Attorney Lessler, acting on Pearlman's behalf.
B. As To The Seventh Count
The seventh count of the plaintiff's complaint alleges the acts described in the sixth count were unfair trade practices under General Statutes § 42-110b. General Statutes § 42-110b(a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." "In order to allege a CUTPA violation properly, the plaintiff must allege, inter alia, that the acts complained of were performed in a trade or business." (Internal quotation marks omitted.) Pergament v. Green,32 Conn. App. 644, 655, 630 A.2d 615, cert. denied, 228 Conn. 903,634 A.2d 296 (1993). There is a split at the superior court level, as yet unresolved by the appellate tribunal, as to whether a single act can constitute a CUTPA violation. The majority of superior court decisions have held, however, that a single act will not constitute a CUTPA violation if the actor is an individual not engaged in a trade or business, but, rather, sells his own car or house. McCarthy v. Fingelly, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 2688394 (May 28, 1991, Katz, J.) (6 C.S.C.R. 511); Skinner v. Till, Superior Court, judicial district of New London at New London, Docket CT Page 1479 No. 514857 (April 16, 1991, Teller, J.) (6 C.S.C.R. 623) (holding "that when the legislature enacted section 42-110b(a), it intended to provide a right of action against only those persons acting in the course of a trade, profession or business, and did not intend to provide a right of action against individual homeowners not so engaged."); Koehm v. Kuhn,41 Conn. Sup. 130, 139 558 A.2d 1042 (1987). aff'd., 18 Conn. App. 313,557 A.2d 933 (1989).
In their written briefs, neither party addresses the distinction between a cause of action for fraud and a cause of action for conduct that violates CUTPA. Drawing a distinction between the two causes of action is necessary before the court can determine whether Pearlman's motion for summary judgment should be granted as to count seven of the complaint.
"It is well settled that whether a defendant!s acts constitute fraudulent misrepresentation, or deceptive or unfair trade practices under CUTPA, is a question of fact for the trier. . . ." Tallmadge Bros.Inc. v. Iroquois Gas Transmission System, 252 Conn. 479, 505, 746 A.2d 1277
(2000). "The distinction between CUTPA and fraudulent misrepresentation is that while the plaintiff must prove reliance on an alleged fraudulent misrepresentation, reliance is not an element of a CUTPA claim." Gold v.University of Bridgeport School of Law, 19 Conn. App. 379, 381,562 A.2d 570, cert. denied, 213 Conn. 801, 567 A.2d 832 (1989). In the present case, Altern has provided no evidence, in the form of an affidavit or otherwise, that indicates that Pearlman or Lessler was engaged in the trade or business of selling real estate. Pergament v. Green, supra,32 Conn. App. 655. The court finds that the sale of Lot 2 was an isolated sale of real estate by a person not engaged in the business of selling real estate. Accordingly, Pearlman's motion for summary judgment should be and is hereby granted as to the seventh count of the complaint.
By the Court,
Joseph W. Doherty, Judge